FILED
2025 DEC 15 PM 4:23
CLERK
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH — CENTRAL DIVISION

**Leslie Fletcher,**
**Plaintiff, Pro Se**
**c/o NGS, LLC**
**5900 Balcones Dr., #28332**
**Austin, TX 78731**
**(972) 767–8991**
**les.fletcher@tumurruranch.com**

    **Plaintiff,**

**v.**


**CITY OF HILDALE, UTAH;**

**HILDALE CITY UTILITIES DEPARTMENT;**

**HILDALE PUBLIC WORKS DEPARTMENT;**

**JERRY POSTEMA, Utility Director,**

**City of Hildale (official capacity);**

**JNJ ENGINEERING CONSTRUCTION, INC.;**

**REMEDY EXCAVATING, LLC;**

**JOHN DOES 1–30;**

**BUREAU OF LAND MANAGEMENT;**

**UNITED STATES DEPARTMENT OF THE INTERIOR;**

**UTAH STATE DIRECTOR, BLM (official capacity);**

**ASSISTANT SECRETARY OF THE INTERIOR FOR**

**LAND & MINERALS (official capacity);**

    **Defendants.**


**VERIFIED COMPLAINT**

**FOR DECLARATORY AND**

**INJUNCTIVE RELIEF**


Case: 4:25−cv−00141
Assigned To : Allen, Ann Marie McIff
Assign. Date : 12/15/2025
Description: Fletcher v. City of Hildale
et al


**Case No. _____**

**Judge _____**

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

*(National Historic Preservation Act; National Environmental Policy Act; Clean Water Act; Archaeological Resources Protection Act; Administrative Procedure Act; Declaratory Judgment Act)*

## INTRODUCTION

1. This action seeks declaratory and injunctive relief to stop unlawful, unpermitted, and destructive activities taking place in Maxwell Canyon, located in Hildale, Utah. Defendants—including the City of Hildale, its Utilities and Public Works Departments, its licensed contractors, and federal agencies charged with resource protection—have authorized, directed, or failed to prevent ground disturbance, trenching, grading, hydrological modification, cultural site destruction, and archaeological damage in one of the most historically, culturally, and hydrologically significant canyons in the Short Creek region.

2. Maxwell Canyon is a Traditional Cultural Landscape, known in Indigenous Paiute cosmology as part of Tumurru, and later as one of the foundational hydrologic and settlement corridors of the Lauritzen Short Creek homestead beginning in 1910. Its canyon walls, watercourse, and surrounding features contain:

   - federally documented prehistoric archaeological sites (BLM Site U-17609),

   - culturally sensitive hydrological pathways dating to the 1910–1912 settlement era,

   - CCC-era infrastructure (including the 1948 connected branch line),

   - the 1953 Mayo engineering hydrologic assessments,

   - the 1927 and earlier water rights infrastructure,

   - and burial, habitation, and historic-use patterns recognized by tribal, settler, and federal historical records.

3. Despite the canyon's well-documented sensitivity, Defendants have undertaken or allowed excavation, trenching, utility installation, road expansion, and hydrologic alteration without:

- a Section 106 (§106) review or determination of effect under the National Historic Preservation Act (NHPA);

- an Environmental Assessment (EA) or Environmental Impact Statement (EIS) under the National Environmental Policy Act (NEPA);

- a Jurisdictional Determination or §404 permit under the Clean Water Act (CWA);

- archaeological protection measures required under the Archaeological Resources Protection Act (ARPA);

- a floodway alteration permit for work inside FEMA Zone A;

- required disclosure to state historic preservation officers;

- any hydrologic or environmental clearance whatsoever.

4. Work has continued during an active §106 review, after the Utah State Historic Preservation Office (SHPO) confirmed that the City's prior E106 submission was materially inaccurate, misidentified the project, omitted the amphitheater and utility expansions, and failed to disclose the full canyon footprint.

5. The Bureau of Land Management (BLM) further confirmed that no §106 number has ever been issued because the City never provided correct information. Despite this, BLM has taken no steps to prevent unlawful ground disturbance under 36 C.F.R. §800.13(b)'s "post-review discovery" requirements.

6. The U.S. Army Corps of Engineers (USACE) confirmed that Hildale City has no §404 permit and no Jurisdictional Determination, making all trenching within the Maxwell Creek channel unlawful under the Clean Water Act.

7. These unlawful actions have caused—and continue to cause—irreparable harm to cultural resources, archaeological context, hydrologic structures, canyon morphology, federal cultural properties, and the heritage landscape associated with a recognized cultural landscape associated with Maxwell Canyon and the Short Creek region and the Short Creek settlement.

8. Plaintiff seeks declaratory and injunctive relief compelling Defendants to comply with federal law; halting all canyon disturbance; requiring proper environmental, hydrologic, cultural, and archaeological assessments; and preserving the canyon and associated historic and cultural features pending lawful review under NHPA, NEPA, ARPA, and the APA.

**STANDING SUMMARY**

9. Plaintiff is the great-grandson of Jacob M. Lauritzen (also known historically as J.M. Lauritzen), founder of the Short Creek settlement (1910), grandson of Miriam Clark Lauritzen, great-nephew of author and historian Jonreed Lauritzen[1] (also known historically as John Reed Lauritzen), and direct descendant of the families who constructed, maintained, and preserved the canyon water systems, cultural landscapes, and settlement structures within and adjacent to Maxwell Canyon.

---

[1] Historical references in administrative or archival materials to 'John Reed' refer to Jonreed Lauritzen, who later adopted the consolidated name 'Jonreed.'

10.  Plaintiff is custodian of family archives, manuscripts, water-system maps, CCC records, historic agreements (including the 1961 Sacred Trust Agreement), and hydrologic infrastructure records, giving him unique historical and cultural expertise.

11.  Plaintiff regularly visits the canyon, has documented its destruction, and owns an adjacent property (Parcel HD-180-NP) that is directly affected by hydrologic, cultural, visual, environmental, and heritage impacts from Defendants' actions.

12.  Plaintiff's cultural, historical, hydrological, and aesthetic injuries constitute concrete and particularized harm under Article III.

13.  Plaintiff continues to receive records through pending and ongoing FOIA requests and anticipates that additional responsive materials may be produced. Plaintiff reserves the right to seek leave of Court to supplement the record if warranted.

## JURISDICTION AND VENUE

### A. Federal Question Jurisdiction – 28 U.S.C. § 1331

13. This Court has subject-matter jurisdiction under 28 U.S.C. §1331, because this action arises under:

- the National Historic Preservation Act (54 U.S.C. §300101 et seq.);

- the National Environmental Policy Act (42 U.S.C. §4321 et seq.);

- the Clean Water Act (33 U.S.C. §1251 et seq.);

- the Archaeological Resources Protection Act (43 U.S.C. §470aa et seq.);

- the Administrative Procedure Act (5 U.S.C. §§701–706);

- the Declaratory Judgment Act (28 U.S.C. §§2201–2202); and

- federal common law principles governing cultural-resource, archaeological, and hydrological protection.

These statutes present federal questions within the Court's jurisdiction.

### B. Administrative Procedure Act Jurisdiction – 5 U.S.C. §§702, 704 & 706

14. Jurisdiction is also proper under the Administrative Procedure Act ("APA"), 5 U.S.C. §§702, 704, and 706, because:

(a) Plaintiff is "adversely affected or aggrieved" within the meaning of §702;

(b) Defendants BLM and DOI have taken final agency action or unlawfully withheld required agency action;

(c) The APA waives sovereign immunity for suits seeking injunctive and declaratory relief for legal wrongs caused by federal agencies; and

(d) Agency failures to comply with NEPA, NHPA, ARPA, the CWA, and their own regulations constitute reviewable action under §706.

15. The APA supplies the cause of action for Plaintiff's claims against the federal defendants.

## C. National Historic Preservation Act (NHPA) Jurisdiction

16. Jurisdiction exists under 54 U.S.C. §306108 and 36 C.F.R. Part 800, which require federal agencies to:

- identify historic properties;

- assess impacts;

- consult with SHPO;

- consult with tribes;

- issue a determination of effect;

- and suspend activity upon discovery of unreviewed cultural resources under 36 C.F.R. §800.13(b).

17. The BLM's failure to perform these nondiscretionary duties creates jurisdiction under federal question and APA standards.

## D. National Environmental Policy Act (NEPA) Jurisdiction

18. This Court has jurisdiction to review federal agency noncompliance with NEPA under 42 U.S.C. §4331 et seq. and 28 U.S.C. §1331.

19. NEPA requires federal agencies to conduct environmental analysis before approving or allowing actions that significantly affect the human environment.

20. BLM either:

- approved actions without NEPA review;

- failed to prevent actions requiring NEPA review; or

- relied on materially incorrect project information.

These failures are reviewable under 5 U.S.C. §706(2)(A)–(D).

## E. Clean Water Act Jurisdiction

21. The Court has jurisdiction over claims arising under the Clean Water Act, 33 U.S.C.

§1365(a), because Defendants have:

- discharged fill material into waters of the United States (Maxwell Creek)

- without obtaining a §404 permit;

- without a jurisdictional determination;

- and without complying with Corps regulations.

22. Violations of §404 constitute federal question jurisdiction under 28 U.S.C. §1331.

## F. Archaeological Resources Protection Act (ARPA) Jurisdiction

23. Jurisdiction lies under ARPA, 43 U.S.C. §§470aa et seq., because:

- Defendants have disturbed or threatened to disturb archaeological resources on

  federal-involved land;

- during an open §106 process; and

- without required ARPA permits or professional supervision.

ARPA violations are enforceable under the APA and federal question jurisdiction.

## G. Declaratory Judgment Act – 28 U.S.C. §§2201–2202

24. Plaintiff seeks declarations regarding:

- statutory violations;

- unlawful agency action;

- necessary remedies;

- and rights under federal cultural, environmental, and water-protection statutes.

The Declaratory Judgment Act grants this Court authority to declare such rights.

## H. Supplemental Jurisdiction – 28 U.S.C. §1367

25. To the extent Plaintiff's claims involve:

- trespass to cultural or hydrologic resources;

- public nuisance;

- or violations of Utah's cultural resource statutes;

this Court has supplemental jurisdiction because these claims arise from the same nucleus of operative fact as the federal claims.

## I. Sovereign Immunity Waiver

26. Sovereign immunity is waived under:

- 5 U.S.C. §702 (APA waiver for non-monetary relief);

- NHPA §306108 (mandatory federal compliance);

- Clean Water Act §313 (federal facilities compliance);

- NEPA (judicial review under §702);

- the Declaratory Judgment Act (as procedural mechanism).

27. Plaintiff seeks no monetary damages from federal defendants—only declaratory and injunctive relief—falling squarely within the APA's immunity waiver.

## J. Venue – 28 U.S.C. §1391(e)

28. Venue is proper in the District of Utah because:

(a) the property at issue—Maxwell Canyon—is located in this District;

(b) the events and omissions giving rise to the claims occurred in this District;

(c) Hildale City, its Utilities Department, and its Public Works Department reside and operate in this District; and

(d) the BLM Utah State Office and federal land administration activities underlying these claims occur in this District.

## K. Relief Sought is Within the Court's Authority

29. The Court has authority to:

- enjoin unlawful municipal and contractor actions;

- compel federal agency compliance with NHPA and NEPA;

- order preservation measures under ARPA and §800.13(b);

- declare rights and violations under federal law;

- vacate improper agency actions under APA §706(2);

- issue injunctive relief under Rule 65 and equitable authority.

## PARTIES

### A. PLAINTIFF

### 1. Plaintiff Leslie Fletcher

30. Plaintiff Leslie Fletcher is a cultural descendant, archival custodian, and direct familial successor of the original 1910 Short Creek settlement established by his great-grandfather Jacob M. Lauritzen, his great-uncle and renowned author Jonreed Lauritzen, and his grandmother Miriam Clark Lauritzen.

31. Plaintiff is the great-grandson of Jacob M. Lauritzen, the founder of the original Short Creek homestead and builder of the earliest water-diversion and canyon-hydrology systems that underlie the settlement, including the Maxwell Creek ditchworks constructed between 1910 and 1912.

32. Plaintiff is the grandson of Miriam Clark Lauritzen, the daughter of Jacob Lauritzen, a cultural steward of Tumurru-related oral traditions, and custodian of historic materials, water-system maps, genealogical documents, and cultural writings.

33. Plaintiff is the great-nephew of Jonreed Lauritzen, author of seventeen published novels, the author of *Naked to the Wind* (1972), and an important literary chronicler of the Short Creek region, a recognized cultural landscape associated with Maxwell Canyon and the Short Creek region, and the cultural meaning of the canyon landscape.

34. Plaintiff maintains, preserves, and curates extensive family archives, including:

- historic correspondence;
- water-rights documentation;
- CCC-era hydrologic records;
- the 1953 Mayo engineering audit;

- the 1961 sacred trust agreement;

- 1948 culinary system documents;

- canyon maps, surveys, and photographs;

- manuscripts describing the cultural identity of Tumurru;

- archaeological references preserved within family oral history.

35. Plaintiff also possesses specialized and personal knowledge of Maxwell Canyon's:

- hydrology;

- pre-1950s water infrastructure;

- canyon geomorphology;

- cultural and traditional significance;

- archaeological sensitivity;

- risk exposure from gully formation and altered flow paths.

36. Plaintiff regularly travels to Maxwell Canyon and documents site conditions. Plaintiff holds an ownership interest in an adjacent parcel of real property (Parcel HD-180-NP) containing a historic structure commonly known as the "Cottage in the Canyon," which is culturally and hydrologically connected to Maxwell Canyon.

37. Plaintiff has personally witnessed and documented the grading, trenching, utility cutting, canyon-floor excavation, and hydrologic alterations conducted by Defendants.

38. Plaintiff suffers direct, concrete, particularized, and irreparable injury to:

- cultural heritage;

- access to cultural landscape features;

- hydrologic environment;

- archaeological context;

- aesthetic and environmental interests;

- the historical continuity of Tumurru and Short Creek;

- the stability and safety of his adjacent land.

39. Plaintiff has standing under Article III and under the APA, NHPA, NEPA, CWA, ARPA, and the Declaratory Judgment Act.


## B. LOCAL GOVERNMENT DEFENDANTS

2. City of Hildale, Utah

40. Defendant City of Hildale is a municipal corporation in Washington County, Utah. It is responsible for:

- land-use decisions;

- canyon development projects;

- contract issuance to JNJ Engineering Construction, Inc.;

- direction of municipal utility and public works staff;

- authorizing excavation and construction in Maxwell Canyon.

41. Hildale approved, authorized, or failed to prevent unlawful canyon disturbance and is liable for all municipal actions alleged herein.


3. Hildale City Utilities Department

42. The Hildale City Utilities Department is a subdivision of the City of Hildale and is responsible for:

- waterline installation;

- trenching operations;

- utility routing;

- contractor direction;

- canyon hydrology modifications;

- oversight of excavation and equipment operators.

43. Remedy Excavating identified the Utility Director as the directing authority governing excavation and trenching operations in Maxwell Canyon.

44. The Utilities Department is liable for its participation in unpermitted hydrological and cultural-resource disturbance.

## 4. Hildale Public Works Department

45. Defendant Hildale Public Works Department oversees:

- roads,

- grading,

- equipment deployment,

- machinery operations,

- construction logistics.

46. Public Works personnel directly facilitated or supervised ground disturbance within the canyon without required environmental, archaeological, or hydrologic clearance.

## 5. Utility Director — Jerry Postema (Official Capacity Only)

47. Jerry Postema, Utility Director for the City of Hildale, is named in his official capacity only.

48. As Utility Director, Postema is responsible for:

- directing excavation contractors;

- approving trenching and utility cuts;

- issuing or authorizing work orders;

- participating in canyon excavation decisions;

- supervising staff whose actions affected canyon hydrology and cultural resources.

49. Postema is a proper defendant for injunctive and declaratory relief because he maintains operational authority over ongoing and future canyon disturbance.


## C. CONTRACTOR DEFENDANTS

6. JNJ Engineering Construction, Inc.

50. Defendant JNJ Engineering Construction, Inc. is a licensed Utah contractor hired by the City of Hildale to perform engineering-related construction, excavation, and utility expansion in Maxwell Canyon.

51. JNJ directly supervised or executed:

- excavation;

- trench cutting;

- utility installation;

- movement of heavy equipment;

- grading within the canyon floodway.

52. JNJ acted under municipal authority but bears independent liability for statutory and regulatory violations.


7. Remedy Excavating, LLC

53. Defendant Remedy Excavating, LLC, a Utah limited liability company, through its sole member Royce D. Jessop, performed the following ground-disturbing activities:

- canyon trenching;

- grading;

- ground disturbance;

- equipment operations;

- pipeline removal or alteration;

- excavation within the creek channel itself.

54. Remedy Excavating identified the Hildale Utility Director as the directing authority—linking municipal decision-making directly to on-ground disturbance.

55. Remedy Excavating is liable for unpermitted disturbance of cultural, hydrologic, and archaeological resources.

8. John Does 1–30

56. Plaintiff names John Does 1–30 to represent:

- unidentified Public Works staff;

- unidentified Utilities staff;

- field supervisors;

- equipment operators;

- inspectors;

- individuals who authorized or directed canyon disturbance;

- individuals who may have altered archaeological materials;

- contractors or subcontractors operating machinery on behalf of the City.

57. Their identities will be amended as discovery proceeds.


**D. FEDERAL DEFENDANTS**

9. Bureau of Land Management (BLM)

58. Defendant Bureau of Land Management is a federal agency within the U.S. Department of the Interior responsible for administering federal lands and cultural resources.

59. BLM:

- failed to assign a §106 number;

- relied on incorrect project information;

- failed to suspend activity under §800.13(b);

- failed to protect known archaeological sites documented in 1976 (U-17609).

60. BLM is sued for declaratory and injunctive relief only.


10. United States Department of the Interior (DOI)

61. Defendant Department of the Interior oversees BLM and is responsible for ensuring compliance with:

- NHPA;

- NEPA;

- APA;

- ARPA;

- federal cultural-resource regulations.

62. DOI failed to oversee BLM's compliance and is sued in its official capacity.

11. Utah State Director, BLM (Official Capacity)

63. Defendant Utah State Director of BLM has authority over:

- §106 compliance;

- NEPA review;

- land-use decisions;

- cultural resource management within Utah;

- enforcement of §800.13(b) "post-review discovery" requirements.

64. The State Director is sued in his official capacity.

12. Assistant Secretary of the Interior for Land & Minerals (Official Capacity)

65. Defendant Assistant Secretary for Land & Minerals Management supervises national policy for:

- cultural resource protection;

- environmental compliance;

- land-use decisions;

- NHPA and NEPA implementation.

66. The Assistant Secretary is a proper defendant for declaratory and injunctive relief under the APA.

## STATEMENT OF FACTS

### A. Cultural, Historical, and Settlement Background of Maxwell Canyon

### 1. Indigenous Cultural Landscape: Tumurru

67. Maxwell Canyon forms part of a larger cultural landscape known in Southern Paiute cosmology as Tumurru, a name referring to both the mountain and its surrounding canyons, springs, and watercourses.

68. Tumurru is described in Indigenous cosmology as a living feature, where canyon walls, hydrology, shadow, sound, and water movement form a spiritually associated whole.

69. In Paiute traditional knowledge systems, water pathways are feminine, representing life, continuity, lineage, and protection.

    This meaning is reflected in the historical filing by Annie Lauritzen, who filed early Short Creek water rights—an unusual and culturally significant act for a woman in 1910.

70. Tumurru's cultural identity predates white settlement and was later documented in manuscripts, oral histories, and archives preserved by Plaintiff and his ancestors, including unpublished works such as Jonreed Lauritzen's *Naked to the Wind* (1972).

### B. Settlement History: The 1910–1912 Lauritzen Establishment

### 1. Jacob M. Lauritzen's Arrival and Water-System Construction

71. In 1910, Jacob M. Lauritzen, Plaintiff's great-grandfather and a former federal bankruptcy referee (1902–1908), relocated his family to Short Creek and began establishing agricultural and hydrologic systems in Maxwell Canyon.

72. Jacob constructed the Maxwell Creek ditch system between 1910 and 1912, enabling cultivation and foundational settlement for the Short Creek community.

73. As confirmed by Mohave County historian Roman Malach (1982, 1975 publications), Jacob:

- completed the primary water ditch in 1912,

- established water conveyances across the Maxwell/SCC watershed,

- pioneered the area long before the formal settlement was recognized.

74. These early ditchworks formed the hydrologic basis for the Short Creek community and remain partially visible and measurable today in canyon morphology.

### C. Early-Hydrology and Water-Rights Documentation

### 1. 1910 A3241 Maxwell Creek Water Right

75. Water Right A3241 (Maxwell Creek), recorded beginning in 1910, is one of the earliest rights in the region, forming the backbone of Maxwell Canyon's hydrology.

76. The system relied on canyon hydrology, natural channels, and constructed ditches that still influence water flow, soil deposition, erosion, and gully formation today.

### 2. 1927 Engineering Diagram (81-84)

77. The 1927 engineering map corresponding to Water Right 81-84 depicts:

- the Maxwell Canyon hydrologic alignment,

- ditch conveyances,

- early diversion paths,

- canyon infrastructure built by the Lauritzen family.

78. This record places Maxwell Canyon unmistakably within the historic hydrologic system critical to early Short Creek existence.

## D. CCC-era Infrastructure and 1948 Connected Culinary Line

### 1. CCC Pipe and LIA Easement

79. In 1939–1948, the Civilian Conservation Corps (CCC) installed hydrologic piping through Maxwell Canyon as part of a federal water-distribution upgrade.

80. A 1940 Lauritzen Irrigation Association (LIA) easement legally established the right-of-way protecting the CCC line across community lands.

81. This easement and its path were acknowledged again in:

- 1976 BLM and municipal agreements,

- 1991 and 2015 hydrologic and gully reports,

- 2015 and 2024 project baselines.

### 2. The 1948 Branch Line

82. The "1948 culinary branch line" was directly connected to CCC works and specifically protected in:

- the 1961 Sacred Trust Agreement,

- 1953 engineering audits,

- later utility formation documents.

83. Defendants' excavation threatens to remove or destroy this historically significant infrastructure, which cannot be replaced or reconstructed.

## E. 1953 Mayo Audit and Hydrologic Assessments

**1. Confirmation of Historic Water Pathways**

84. The 1953 Mayo hydrologic audit, commissioned to evaluate Short Creek's water systems, documented:

- the routing of historic Lauritzen lines,

- canyon hydrology entering Maxwell Canyon,

- the placement of CCC lines relative to natural channels.

85. These documents show that Maxwell Canyon forms an interconnected hydrologic system, not an isolated drainage.

86. The City's current trenching and grading activities cut directly across the hydrologic and cultural pathways established in this audit.

**F. 1961 Sacred Trust Agreement and Water-System Obligations**

87. The 1961 Sacred Trust Agreement, executed between Jonreed Lauritzen and the United Effort Plan (UEP), required:

- maintaining the water system;

- protecting the 1948 branch line;

- acknowledging superior Lauritzen water rights and historic use;

- prohibiting development that would harm canyon hydrology.

88. These covenants run with the land and have been repeatedly acknowledged in:

- municipal communications (2017 meeting with Mayor),

- BLM correspondence,

- the 1982 federal lease documents.

89. Despite being placed on notice, neither the City nor its contractors respected these restrictions.

## G. 1976 Archaeological Excavation (BLM Site U-17609)

90. In 1976, BLM contracted archaeologist Dr. Richard Thompson to excavate a prehistoric cultural site within Maxwell Canyon because the site could not be excluded from the federal lease footprint (R&PP Lease Serial No. 17609).

91. This site:

- contains subsurface cultural materials;

- is federally recognized as a cultural resource;

- has never been cleared for modern construction;

- falls under BLM's ongoing federal responsibility.

92. No archaeological monitor was present during trenching in 2025.

   No ARPA permit was issued.

93. Under 36 C.F.R. §800.13(b), discovery of previously unreviewed archaeological materials requires immediate stop-work—a duty Defendants ignored.

## H. 1991 & 2015 Flood and Gully Evidence

94. Maxwell Canyon is a FEMA Zone A floodway.

   Multiple hydrologic studies from 1991 and 2015 show:

- severe gully formation,

- risk of wall collapse,

- unstable canyon sediments,

- major storm sensitivity.

95. In 2015, the canyon gully shifted, severing a historic waterline and exposing critical infrastructure.

BLM visited the site, documented the damage, and notified the City.

96. Despite this knowledge, Defendants expanded canyon-floor disturbance in 2025 without hydrologic modeling.


**I. Misrepresentations in the 2024 E106 Submission**

97. In 2024, Jones & DeMille Engineering submitted an E106 (cultural review) request on behalf of Hildale City.

They:

- misidentified the project as strictly a "2026 culinary water upgrade";

- omitted the amphitheater, event center, and canyon modifications;

- omitted the road widening;

- omitted trenching in Maxwell Canyon;

- omitted floodway alterations.

98. SHPO's review was based on false scope information and therefore invalid.


**J. SHPO Correction and Active 106 Review (2025)**

99. In November 2025, the Utah SHPO confirmed:

- the 2024 submission was inaccurate and misleading;

- they never received the correct project information;

- Maxwell Canyon's entire footprint required review;

- construction should not proceed without accurate consultation.

100.    The SHPO expressly stated that disturbance during review violates NHPA.

101.    Work nonetheless continued.


## K. BLM Failure to Perform Required Duties

102.    In December 2025, BLM's State Office confirmed:

- no §106 number was ever issued,

- no review was completed,

- the City had provided incorrect information,

- the 70-acre "approved" footprint did not apply to Maxwell Canyon,

- BLM had not authorized any canyon disturbance.

103.    Under 36 C.F.R. §800.13(b), BLM was obligated to require an immediate stop-work when new cultural resources or project inconsistencies were discovered.

104.    BLM took no action, compounding the violations.


## L. USACE Confirms No §404 Permit

105.    Plaintiff contacted the U.S. Army Corps of Engineers.

They confirmed:

- no Jurisdictional Determination exists;

- no §404 permit has been issued;

- trenching and pipe work inside the creek channel are unlawful discharges.

106.    This makes all creek disturbance a violation of the Clean Water Act.

**M. Active Ground Disturbance Documented by Plaintiff**

**1. November 6, 2025 Site Visit**

107.     Plaintiff visited Maxwell Canyon on November 6, 2025 and documented:

- trenching;

- canyon-floor excavation;

- heavy grading;

- utility cutting;

- hydrologic diversion;

- road expansion inside the canyon;

- staging of heavy equipment within the floodway.

108.     Plaintiff photographed and filmed all activities.

**2. Admissions by Project Personnel**

109.     Remedy Excavating (Royce D. Jessop) stated on record:

- he was directed by the Hildale Utility Director,

- he was unaware of §106 requirements,

- he was unaware of archaeological sensitivity,

110.     Hildale City Parks Supervisor (Nathanial Barlow) stated on record:

- the City intended to remove the remaining 1948 line,

- plan was to change the cleared area in NE of park (1991 Cleared Area) to drain to North, away from culvert under road and the gully that has formed,

- however, no plans that he was aware of to address gully,

111.     Removal of historic hydrologic systems violates NHPA, NEPA, ARPA, and historic covenants.

## N. Current Irreparable Harm

111.    Defendants' actions are causing:

- loss of archaeological context;

- destruction of cultural pathways;

- alteration of hydrology;

- deepened gully formation;

- risk of slope failure;

- damage to federally recognized cultural landscapes;

- disturbance of traditional-use areas.

112.    Such harms cannot be remedied monetarily and are recognized as irreparable under

federal law.

## CAUSES OF ACTION

**COUNT I**

**<u>Violation of the National Historic Preservation Act (NHPA)</u>**

54 U.S.C. §306108; 36 C.F.R. Part 800

*(Against Federal Defendants: BLM, DOI, BLM State Director, Assistant Secretary)*

113.    Plaintiff incorporates all preceding paragraphs as though fully stated herein.

114.    §106 of the National Historic Preservation Act ("NHPA") requires federal agencies to:

- identify historic properties (36 C.F.R. §800.4);

- define the Area of Potential Effects ("APE");

- consult with the State Historic Preservation Officer ("SHPO");

- consult with affected tribes;

- evaluate effects to historic properties (36 C.F.R. §800.5);

- resolve adverse effects; and

- suspend activity when previously unidentified resources may be affected (36 C.F.R. §800.13(b)).

115.    Maxwell Canyon contains federally documented prehistoric archaeological sites, including BLM Site U-17609, excavated in 1976 and recognized as historically significant.

116.    BLM never completed or initiated proper §106 review for the actual scope of the Maxwell Canyon project.

117.    BLM relied on materially inaccurate project descriptions, including the misidentified "2026 culinary upgrade," which omitted canyon trenching, floodway work, utility expansion, road widening, and amphitheater construction.

118.    BLM failed to:

- identify the correct APE;

- assess effects to archaeological or historic properties;

- engage in meaningful consultation;

- suspend disturbances during active review;

- comply with §800.13(b)'s mandatory stop-work requirements.

119.    NHPA violations are reviewable under the APA, 5 U.S.C. §§702, 706.

120.    Defendants' actions constitute unlawfully withheld and arbitrary and capricious action under 5 U.S.C. §706(1) and §706(2)(A).

121.    Plaintiff is entitled to declaratory and injunctive relief requiring lawful §106 compliance.

**COUNT II**

**Violation of the National Environmental Policy Act (NEPA)**

42 U.S.C. §4331 et seq.

*(Against Federal Defendants: BLM, DOI, BLM State Director, Assistant Secretary)*

122.    Plaintiff incorporates all preceding paragraphs.

123.    NEPA requires federal agencies to prepare an Environmental Assessment ("EA") or Environmental Impact Statement ("EIS") for actions that significantly affect the human environment.

124.    Federal involvement in the Maxwell Canyon project is demonstrated by:

- BLM land-administration responsibilities;

- cultural-resource review requirements;

- archaeological site jurisdiction;

- federal R&PP lease history;

- federal funding connections (UORG and state-federal pass-throughs);

- federal oversight duties triggered by the 1976 archaeological excavation;

- Clean Water Act §404 permitting requirements.

125.    Despite this involvement, BLM prepared no NEPA document for the canyon disturbances.

126.    BLM unlawfully relied on inaccurate project descriptions and never assessed:

- hydrology effects;

- canyon morphology;

- cultural landscapes;

- archaeological sensitivity;

- utility excavation impacts;

- floodway risks;

- cumulative impacts related to the amphitheater and event-venue expansion.

127.    NEPA prohibits such segmentation and concealment of cumulative effects.

128.    Defendants' actions violate NEPA and are arbitrary and capricious under 5 U.S.C. §706(2)(A)–(D).

129.    Plaintiff is entitled to declaratory and injunctive relief requiring full NEPA compliance.

**COUNT III**

**Violation of the Administrative Procedure Act (APA)**

5 U.S.C. §§701–706

*(Against Federal Defendants)*

130.    Plaintiff incorporates all preceding paragraphs.

131.    The APA provides for judicial review of:

- agency action unlawfully withheld (§706(1));

- agency action that is arbitrary, capricious, an abuse of discretion, or contrary to law (§706(2)(A));

- agency actions taken without observance of procedure required by law (§706(2)(D)).

132.    BLM and DOI violated the APA by:

- failing to initiate or complete required NHPA and NEPA reviews;

- relying on inaccurate or misleading information;

- failing to correct known deficiencies;

- failing to suspend ground disturbance during Section 106 review;

- failing to protect known archaeological resources;

- failing to prevent unlawful excavation under 36 C.F.R. §800.13(b).

133.    FOIA production DOI-BLM-2022-000704 / FOIA UT-2022-06  confirms that the administrative record for the Maxwell Canyon project lacks essential materials, including archaeological inventories, hydrologic assessments, NEPA screening documents, inspection logs, and correspondence from designated Bureau of Land Management custodians. These omissions render meaningful review under the Administrative Procedure

Act impossible and support issuance of emergency injunctive relief to preserve the status quo pending completion of the record.

134.     These failures constitute final agency actions (or unlawfully withheld actions) reviewable under the APA.

135.     Plaintiff is entitled to vacatur of the flawed actions, declaratory relief, and injunctive orders compelling compliance.

---

**COUNT IV**

**Violation of the Clean Water Act (CWA) – Discharge of Fill Without Permit**

33 U.S.C. §1344 (§404)

*(Against City of Hildale, Utilities Department, Public Works, JNJ, Remedy Excavating)*

135.     Plaintiff incorporates all preceding paragraphs.

136.     Defendants excavated, trenched, and discharged fill or dredged material into Maxwell Creek, a water of the United States, without:

- a Jurisdictional Determination;
- a §404 permit;
- authorization from the U.S. Army Corps of Engineers.

137.     This conduct violates 33 U.S.C. §1344 and implementing regulations.

138.     USACE confirmed that no permits exist for any disturbance in Maxwell Canyon's creek channel.

139.     Defendants' actions constitute unlawful discharges subject to injunctive relief.

**COUNT V**

**Violation of the Archaeological Resources Protection Act (ARPA)**

43 U.S.C. §§470aa–470mm

*(Against City of Hildale, JNJ, Remedy, Public Works, Utilities)*

140.     Plaintiff incorporates all preceding paragraphs.

141.     ARPA prohibits excavation, removal, alteration, or destruction of archaeological resources located on federal lands or lands subject to federal jurisdiction without an ARPA permit.

142.     Maxwell Canyon contains a BLM-recognized archaeological site (U-17609) and areas of federal involvement requiring ARPA adherence.

143.     Defendants excavated soil, disturbed stratigraphy, and threatened archaeological features:

- without an ARPA permit;
- without professional archaeological supervision;
- during an active federal review;
- in contradiction to federal stewardship responsibilities.

144.     These violations support injunctive and declaratory relief.

**COUNT VI**

**Unlawful Ground Disturbance Within a FEMA Floodway (Zone A)**

*(Against City of Hildale, Public Works, Utilities)*

145.     Plaintiff incorporates all preceding paragraphs.

146.     Maxwell Canyon is mapped by FEMA as a Zone A Floodway, requiring hydrologic review and permitting for any alteration to:

- flood flows;

- drainage patterns;

- canyon morphology;

- sedimentation risks.

147.    Defendants conducted trenching, grading, and utility installation without any floodway-impact analysis.

148.    These actions increase:

- gully deepening;

- slope failure;

- downstream flood risk;

- loss of soil stability.

149.    Defendants violated state and federal floodplain-management standards and are subject to injunctive relief.


**COUNT VII**

**Public Nuisance and Special Injury to Plaintiff**

*(Against City of Hildale, Public Works, Utilities, JNJ, Remedy)*

150.    Plaintiff incorporates all preceding paragraphs.

151.    Defendants' actions unreasonably interfere with:

- cultural resources;

- hydrologic systems;

- canyon stability;

- aesthetic, environmental, and historical interests.

152.    Plaintiff suffers special injury distinct from the public because:

- he is a direct cultural steward of Tumurru;

- he holds and preserves historic archives connected to the canyon;

- his adjacent family property (Parcel HD-180-NP) is uniquely exposed to altered hydrology and erosion;

- his cultural lineage is tied to features being destroyed.

153.    Injunctive relief is appropriate.

## COUNT VIII

## Declaratory Judgment

28 U.S.C. §§2201–2202

154.    Plaintiff incorporates all preceding paragraphs.

155.    A present, actual controversy exists concerning Defendants' statutory violations.

156.    Plaintiff seeks declarations that:

- the canyon disturbance violated NHPA, NEPA, APA, ARPA, and the CWA;

- federal agencies failed to comply with mandatory legal duties;

- municipal defendants acted without required permits;

- all future activity must comply with federal law, hydrologic assessment, and cultural-resource protections.

157.    Declaratory relief will clarify rights, duties, and legal relations.

## COUNT IX

**<u>Injunctive Relief (Rule 65; Equitable Authority)</u>**

158.    Plaintiff incorporates all preceding paragraphs.

159.    Defendants' actions have caused, and will cause, irreparable harm to:

- cultural heritage;

- archaeological context;

- canyon hydrology;

- CCC infrastructure;

- federally significant landscape features.

160.    Money damages cannot compensate such harm.

161.    Plaintiff seeks:

- preliminary and permanent injunctions;

- preservation of existing conditions;

- suspension of ground disturbance until lawful compliance occurs.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court enter judgment in his favor and grant the following relief:

**A. Declaratory Relief**

1. A declaration that Defendants City of Hildale, Hildale Utilities Department, Hildale Public Works Department, JNJ Engineering Construction, Inc., and Remedy Excavating, LLC have violated:

   - the Clean Water Act,

   - the Archaeological Resources Protection Act,

   - the National Historic Preservation Act,

   - federal cultural-resource standards under 36 C.F.R. Part 800,

   - FEMA floodway restrictions, and

   - applicable state environmental and cultural-resource protections.

2. A declaration that Federal Defendants BLM, DOI, the Utah BLM State Director, and the Assistant Secretary for Land & Minerals have violated:

   - the National Historic Preservation Act,

   - the National Environmental Policy Act,

   - the Administrative Procedure Act,

   - ARPA-related stewardship duties,

   - and federal regulations governing §106 compliance.

3. A declaration that the Maxwell Canyon project cannot lawfully proceed without:

   - a correct and complete §106 review;

- consultation with SHPO and tribes;

- a proper Area of Potential Effects (APE) definition;

- a NEPA Environmental Assessment or Environmental Impact Statement;

- a Corps §404 permit and Jurisdictional Determination;

- hydrologic and floodway analysis;

- archaeological supervision.

**B. Injunctive Relief — To Halt Ongoing and Future Harm**

4.  A preliminary and permanent injunction prohibiting all Defendants from:

    - excavation, trenching, grading, or soil disturbance in Maxwell Canyon;

    - altering canyon hydrology, watercourses, or drainage systems;

    - removing or destroying historic water infrastructure, including the 1948 branch line;

    - disturbing or burying archaeological or cultural materials;

    - performing any construction or development inside the canyon floodway;

    - expanding roadways, utilities, or conduits in the canyon;

    - installing amphitheater, event-venue, or related infrastructure within the canyon footprint.

5.  An injunction requiring Defendants to preserve the status quo and prevent further damage to:

    - hydrologic systems,

    - cultural landscapes,

    - archaeological deposits,

    - canyon morphology,

- CCC-era infrastructure,

- and related cultural and environmental resources.

## C. APA Remedies — Compelling Federal Compliance

6. An order under 5 U.S.C. §706(1) compelling BLM and DOI to:

   - initiate and complete a correct §106 review;

   - define an accurate APE that includes Maxwell Canyon, Canaan Mountain (known in Indigenous tradition as Tumurru), the hydrologic system, and the amphitheater footprint;

   - consult with SHPO and affected tribes;

   - evaluate adverse effects;

   - enforce 36 C.F.R. §800.13(b) stop-work mandates;

   - prepare a NEPA Environmental Assessment or Environmental Impact Statement.

7. An order under 5 U.S.C. §706(2):

   - declaring federal inaction "arbitrary, capricious, an abuse of discretion, or contrary to law";

   - vacating any reliance on the defective 2024 E106 submission;

   - vacating any informal federal approvals or reliance documents tied to the flawed project scope.

## D. Clean Water Act Remedies

8. An order requiring the City and its contractors to:

   - cease all discharge of dredged or fill material;

   - obtain a Jurisdictional Determination from the U.S. Army Corps of Engineers;

- obtain a §404 permit if required;

- restore areas unlawfully disturbed.

## E. ARPA & Cultural Resource Protection Remedies

9.  An order requiring:

    - on-site archaeological monitoring for any future permitted work;

    - identification and recording of any exposed cultural materials;

    - stabilization of disturbed stratigraphy;

    - permanent preservation of identified cultural features.

## F. Hydrologic and Floodway Protection Remedies

10. An injunction requiring professional hydrologic modeling to:

    - assess canyon gully expansion risks;

    - evaluate slope-failure potential;

    - determine hazard to property (Parcel HD-180-NP) and adjacent properties;

    - prevent altered flow paths caused by unlawful trenching.

## G. Additional Relief

11. An order awarding Plaintiff:

- costs of litigation under the Equal Access to Justice Act (EAJA) or other applicable authorities;

- legal fees allowable for pro se litigants representing a formal entity or trust (if applicable);

- expert or consultant costs as permitted by statute;

- any other relief the Court deems just and proper.

**VERIFICATION (28 U.S.C. § 1746)**

I, Leslie Fletcher, declare under penalty of perjury under the laws of the United States of America that the foregoing Verified Complaint, including all factual allegations contained therein, is true and correct to the best of my knowledge, information, and belief.

Executed on December 15, 2025.

/s/Leslie Fletcher

Leslie Fletcher
Plaintiff, Pro Se
c/o NGS, LLC
5900 Balcones Dr., #28332
Austin, TX 78731
(972) 767–8991
les.fletcher@tumurruranch.com